IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                        |   |                             |
|------------------------|---|-----------------------------|
|                        | : |                             |
| KEVIN AJENIFUJA        |   |                             |
|                        | : |                             |
|                        |   |                             |
| v.                     | : | Civil Action No. DKC 23-1598 |
|                        |   |                             |
|                        | : |                             |
| EDWARD OWUSU, et al.   |   |                             |
|                        | : |                             |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case brought by a parent against school personnel for prohibiting him from entering the school is the motion to dismiss filed by Defendants Edward Owusu ("Mr. Owusu"), Shannon Grigsby ("Ms. Grigsby"), and Montgomery County Public Schools ("MCPS") (collectively, "Defendants"). (ECF No. 16). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

## I.   Background[1]

Plaintiff Kevin Ajenifuja ("Plaintiff") and his ex-wife Anita Koepcke ("Ms. Koepcke") have three minor children, the eldest of whom attends Clarksburg High School. (ECF No. 1 ¶ 9). On or about July 2020, Ms. Koepcke moved their children from Washington, D.C.

---

[1] Unless otherwise noted, the facts outlined here are set forth in the complaint and construed in the light most favorable to Plaintiff.

to Clarksburg, Maryland without Plaintiff's knowledge or consent. (*Id.*).  Plaintiff and Ms. Koepcke are engaged in an ongoing custody action before the Superior Court of the District of Columbia.  (*Id.* ¶ 9 n.1) (citing case no. 2016-003509-DRB).  Ms. Koepcke has denied Plaintiff all communications and visitation access to their children in violation of a permanent custody order issued by the Superior Court on July 2, 2018.  (*Id.* ¶ 9).  Because Plaintiff does not know Ms. Koepcke's and their children's home address, he cannot visit their home to pick his children up for visitation. (*Id.*).  Since the entry of the custody order on July 2, 2018, Plaintiff has made repeated attempts to visit and spend time with his children, but the last time he had visitation access was on November 16, 2019.  (*Id.* ¶¶ 10, 11 n.2).

On September 25, 2022, Plaintiff sought the assistance of the Montgomery County Police Department in enforcing the custody order.  (*Id.* ¶ 10).  The police department referred him to the Montgomery County Sheriff's Office.  (*Id.*).  The Sheriff's office informed Plaintiff that it could not enforce the custody order without a contempt of court order.  (*Id.*).

After being denied all access to their children for so long, Plaintiff decided to visit his fifteen-year-old daughter, K.A.A., at Clarksburg High School, the only place where Plaintiff knew he could find her.  (*Id.* ¶ 11).  On December 9, 2021, Plaintiff entered the Clarksburg High School administrative office during

2

lunch hour and asked to talk to K.A.A. (*Id.*). An administrative staff member paged K.A.A. and she came to the administrative office. (*Id.*). Plaintiff then handed her a Christmas card and $600 for Christmas presents for her and her two siblings. (*Id.*). Plaintiff's interaction with his daughter at the administrative office took about five minutes. (*Id.*).

Later that day, Plaintiff received an email with an attached letter from Mr. Owusu, the principal of Clarksburg High School. (*Id.* ¶ 12). Mr. Owusu copied Ms. Grigsby, the assistant principal, and other officials including the Area Associate Superintendent of the Office of School Support and Improvement ("OSSI"), Chief Safety Officer, Commander of the 5th Police District, and Director of OSSI on the email. (*Id.*). The letter states:

> As the principal of Clarksburg High School, I am hereby notifying you that, effective immediately, you, Kevin Ajenifuja, are forbidden to enter upon the property or campus of Clarksburg High School, located at 22500 Wims Road, Clarksburg, MD 20871. This action is being taken as a result of you entering the school building on Thursday, December 9, 2021 during the school day in which you entered the school and requested a meeting with your child. We have court documentation that specifically forbids this from occurring. Your behavior has the effect of disrupting and/or disturbing the normal educational functions of this school.
>
> The Montgomery County Public Schools Regulations COC-RA, Trespassing or Willful Disturbance on MCPS Property, and the Annotated Code of Maryland Education Article, Section 26-102, Trespass on the Grounds of a

> Public Institution of Elementary, Secondary or
> Higher Education, states that the principal or
> designee may deny access to the building and
> grounds of the institution to anyone who does
> not have lawful business, or who disrupts or
> disturbs the normal educational functions.
> Failure to comply with this directive will
> result in official police notification that
> may lead to charges being placed for
> trespassing.
>
> If you need to conduct any official business
> at the school, you are requested to call me at
> 240-740-6000 to schedule an appointment to
> meet with me.
>
> I regret the necessity of this action;
> however, I believe it is in the best interest
> of your child and the students and staff at
> Clarksburg High School. Your cooperation is
> appreciated. Should you have any questions
> pertaining to this action, please call me at
> 240-740-6000.

(ECF Nos. 1 ¶ 12; 1-4, at 2).

In his opposition, Plaintiff states that no court documents or orders forbid his going to his children's schools. (ECF No. 18, at 2). He includes text from the Superior Court permanent custody order providing his visitation schedule. (*Id.* at 2-3). In assessing the plausibility of Plaintiff's claims pursuant to Rule 12(b)(6), however, the court considers Plaintiff's complaint, not his opposition to a motion to dismiss. *McDonald v. LG Elecs. USA, Inc.*, 219 F.Supp.3d 533, 541 (D.Md. 2016). A party may not amend a complaint in an opposition to a motion to dismiss. *Id.* Plaintiff does not allege in the complaint that Mr. Owusu did not have any court documentation forbidding his entry. He also does not allege

4

that he told Mr. Owusu, Ms. Grigsby, or anyone else that no court documentation prohibiting him from entering the school exists or that he told them that any documentation that they had was erroneous.[2]

On September 9, 2022, Plaintiff went to a volleyball game at Clarksburg High School after school hours to watch his daughter's team. (ECF No. 1 ¶ 13). Within minutes of his arrival, Mr. Noland, the school's athletic director, asked Plaintiff to leave the gymnasium. (*Id.*). Mr. Noland then called the Montgomery County Police Department to enforce his instructions. (*Id.*).

On September 10, 2022, Plaintiff sent a letter to the Montgomery County Police Department stating that a police officer, Officer Gallagher, arrived at the volleyball game and informed Plaintiff that he was banned from Clarksburg High School grounds for one year. (*Id.*). Plaintiff also wrote that Officer Gallagher told him he was free to attend his daughter's volleyball games outside Clarksburg High School and that starting March 22, 2023, Plaintiff was free to attend her sporting events and other activities at Clarksburg High School. (*Id.*).

---

[2] Any attempt to amend the complaint to allege that no court documentation forbids his entry to his children's schools would be futile. As will be discussed, Plaintiff cannot state a claim—regardless of whether the court documentation exists—under the First Amendment, Fourteenth Amendment (or its state analogue, Article 24 of the Maryland Declaration of Rights), or § 26-102 of the Maryland Education Code.

On June 2, 2023, Plaintiff sent Mr. Owusu an email stating that he planned to attend his second child's middle school graduation ceremony at Clarksburg High School and that he did not want to create a "confrontation" or "distractions" at the event. (*Id.* ¶ 14).  On June 6, 2023, Mr. Owusu sent Plaintiff an email reminding him that he is forbidden to access Clarksburg High School property and therefore may not attend the middle school ceremony. (*Id.* ¶ 15).  Mr. Owusu stated that he has notified the acting principal of Plaintiff's second child's middle school as well as central office safety and security partners.  (*Id.*).

Plaintiff assisted K.A.A. with her English and mathematics schoolwork when she was in middle school and wishes to continue doing so, as she struggles academically at Clarksburg High School. (*Id.* ¶ 16).  Clarksburg High School officials, however, have refused to provide quarterly report cards to Plaintiff starting with the 2022-2023 school year.  (*Id.*).  On February 22, 2023, Plaintiff requested a copy of K.A.A.'s latest report card from Clarksburg High School, but the school ignored the request.  (*Id.*).

Plaintiff filed a complaint on June 14, 2023 naming as defendants Mr. Owusu in his official and individual capacity, Ms. Grigsby in her official and individual capacity, and MCPS in its official capacity.  (ECF No. 1).  Plaintiff alleges that Defendants violated his rights under the First Amendment, Fourteenth

Amendment,[3] Article 24 of the Maryland State Constitution, and § 26-102 of the Maryland Education Code. Defendants filed a motion to dismiss on July 20, 2023. (ECF No. 16). Plaintiff filed a response in opposition on July 31, 2023, (ECF No. 18), and Defendants filed a reply on August 14, 2023, (ECF No. 19).

## II. Standard of Review

In reviewing the complaint in light of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a)(2)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed.R.Civ.P. 8(a)). Nonetheless, the

---

[3] The vehicle for bringing a federal constitutional claim is under 42 U.S.C. § 1983.

complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

## III. Analysis

### A. Montgomery County Public Schools

Defendants contend that all claims against MCPS should be dismissed because MCPS does not possess the right to sue and be sued. (ECF No. 16-2, at 6). They add that any attempt to amend the complaint to name the Board of Education of Montgomery County would be futile because Plaintiff has failed to state a claim under any count. (*Id.*). Plaintiff responds that "Defendant MCPS stands

as a proxy for the Superintendent of Montgomery County Public Schools, Monifa B. McKnight[]" and that a "plaintiff may sue individual state officials (in their official capacities) for injunctive relief." (ECF No. 18, at 4).[4]

Defendants reply that (1) Plaintiff's argument regarding the Superintendent is irrelevant because she has not been named as a party; (2) as a state official acting in her official capacity, the Superintendent is not amenable to suit under § 1983; (3) the court cannot consider any new allegations that the Superintendent knew of her subordinates' alleged violations; (4) such allegations are threadbare and cannot sustain a claim; and (5) Plaintiff cannot sustain a claim against the Superintendent because he has failed to state a claim for any violation by any of her subordinates. (ECF No. 19, at 3-4).

Defendants are correct that "MCPS is not a distinct legal entity empowered to sue or be sued." *Miller v. Montgomery Cnty. Pub. Sch.*, No. 19-cv-3067-TJS, 2020 WL 2097686, at *1 (D.Md. May 1, 2020). Accordingly, Plaintiff's claims against MCPS will be dismissed. *Id.*

Moreover, any attempt to amend the complaint to name as defendants the Board of Education or the Superintendent, acting in

---

[4]   The current Interim Superintendent is Monique Felder, who recently replaced Monifa McKnight.

her official capacity, would be futile.[5]  For some claims, those two would be improper defendants and, for others, inasmuch as Plaintiff fails to state a claim, adding them would be futile.

**B. First Amendment Claim**

In Count I, Plaintiff alleges that Defendants violated Plaintiff's First Amendment right to peaceable assembly by forbidding Plaintiff from entering the Clarksburg High School property and campus.  (ECF No. 1 ¶ 21).  Defendants contend that Count I should be dismissed because Plaintiff failed to identify any protected speech at issue or any action by which Defendants prevented or restricted such protected speech.  (ECF No. 16-2, at 8).

Plaintiff responds that his correspondence with Defendants establishes that he engaged in a constitutionally protected activity, Defendants deprived Plaintiff of the opportunity to engage in the activity, and the protected activity was the motivating factor in Defendants' conduct.  (ECF No. 18, at 5).  He does not specify the constitutionally protected activity in which he engaged.  In their reply, Defendants reiterate that Plaintiff failed to identify any protected speech that Defendants restricted

---

[5] An amendment is futile when it is "clearly insufficient or frivolous on its face."  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

or any assembly that Defendants denied due to such speech.  (ECF No. 19, at 4).

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble[.]"  U.S. Const. amend. I.  "The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental."  *De Jonge v. State of Oregon*, 299 U.S. 353, 364 (1937).  As noted by Judge Hollander, "[t]he contours of the right to peaceably assemble are not precisely defined in case law or otherwise."  *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, No. 21-cv-2337-ELH, 2023 WL 2743361, at *22 (D.Md. March 31, 2023).  Nevertheless, it is possible to state some basic principles.  The right has been tied to "'the broad right of expressive association.'"  *Id.* (quoting *InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*, 534 F.Supp.3d 785, 826 (E.D.Mich. 2021), *reconsideration denied*, 542 F.Supp.3d 621 (E.D.Mich. 2021)).  The First Amendment protects two types of association: "intimate association" and "expressive association."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).  "[I]ntimate association" refers to the right to "enter into and maintain certain intimate human relationships" and "expressive association" refers to the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for

11

the redress of grievances, and the exercise of religion." *Id.* The right to peaceable assembly, therefore, falls under the umbrella of expressive association. The Supreme Court has held that to come within the ambit of the First Amendment's protection of expressive association, "a group must engage in some form of expression, whether it be public or private." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).

Here, Plaintiff has not alleged that he was part of a group engaging in any form of expression. *Id.* Nothing in the complaint indicates Plaintiff came to Clarksburg High School to express himself as a member of a group. Rather, Plaintiff alleges that he entered the school in order to speak with his daughter and give her a Christmas card and money for gifts. (ECF No. 1 ¶ 11). Plaintiff's claim that Defendants violated his First Amendment right to peaceable assembly (Count I) will therefore be dismissed.

### C. Due Process Claim

In Count II, Plaintiff alleges that by violating his right to peaceable assembly, Defendants deprived him of due process under the Fourteenth Amendment. (ECF No. 1 ¶¶ 25, 26). Defendants assert that Count II should be dismissed because Plaintiff does not have a protected "liberty" or "property" interest in accessing school property and was not deprived of any right improperly. (ECF No. 16-2, at 9). They also argue that Ms. Grigsby should be dismissed because the complaint does not identify any personal

action she took to ban Plaintiff from school property.  (*Id.* at 13).  Plaintiff responds that Defendants engaged in deprivation of reputation by sending copies of the ban letter to the Montgomery County Police Department and by removing him from a volleyball game in front of over 150 parents and spectators, and that such a deprivation violates his Fourteenth Amendment rights.  (ECF No. 18, at 7).  Defendants reply that the complaint does not allege deprivation of reputation and that reputational injury alone, without a related constitutional deprivation, does not constitute a Fourteenth Amendment violation.  (ECF No. 19, at 5).

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Due process contains both substantive and procedural components. Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness." *Snider Int'l. Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 145 (4th Cir. 2014) (citing *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990); *Carey v. Piphus*, 435 U.S. 247, 259 (1978)).  "In order to state a claim for a violation of due process, 'a plaintiff must allege sufficient facts to support a finding that the [plaintiff was] deprived of life, liberty, or property, by governmental action.'" *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 79 (4th Cir. 2016) (quoting *Equity in*

*Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 109 (4th Cir. 2011)).

Plaintiff does not specify the interest of which Defendants allegedly deprived him. Based on the pleadings, however, Plaintiff may be contending that he has a right to access his child's school premises. While parents have a right to direct their children's education without unreasonable restrictions, *Herndon by Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 89 F.3d 174, 177 (4th Cir. 1996), "parents have no 'general and unlimited First Amendment right of access to school property[,]'" *Davison v. Rose*, 19 F.4th 626, 641 (4th Cir. 2021) (quoting *Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017)); *see also Just. v. Farley*, No. 5:11-cv-99-BR, 2012 WL 83945, at *3 (E.D.N.C. Jan. 11, 2012) ("While parents have a general constitutional right to direct their children's education without unreasonable interference by the states, . . . this right is limited in scope and does not include the unfettered right to access school premises.").

Courts have uniformly held that parents do not have a constitutional right to enter school premises. *See, e.g.*, *Lovern v. Edwards*, 190 F.3d 648, 655-56 (4th Cir. 1999) (holding that school administrators need not provide a parent with "boundless access to school property" because "school officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for

14

assuring that parents and third parties conduct themselves appropriately while on school property"); *Davison*, 19 F.4th at 641 ("*Lovern* establishes the constitutionality of no-trespass bans against parents attempting to enter school grounds."); *Just.*, 2012 WL 83945, at *3 (holding that a parent "was not deprived of a life, liberty, or property interest when he was banned from the school campus[]"); *Johnson*, 859 F.3d at 175 ("[W]e cannot conclude that a parent has a general and unlimited First Amendment right of access to school property."); *Porter v. Duval Cnty. Sch. Bd.*, 406 F.App'x 460, 462 (11th Cir. 2010) ("While parents have a general due process right to direct their children's education without unreasonable interference by the states, . . . [plaintiff] has provided no legal support for the proposition that this right includes the right to access school premises.").  Others have found that no such right is clearly established:  *Wood v. Bd. of Educ. of Charles Cnty.*, No. 16-cv-00239-GJH, 2016 WL 8669913, at *10 (D.Md. Sept. 30, 2016) ("[I]t is far from clearly established that [plaintiff] had a 'liberty' or 'property' interest to enter the grounds of La Plata High School."); *Jackson v. McCurry*, 762 F.App'x 919, 929 (11th Cir. 2019) ("[T]he few decisions of our sister circuits reviewing claims similar to [plaintiff's] have uniformly concluded that there is no clearly established right for parents to access school property to exercise their rights under the First Amendment.").

Courts have expressed particular concern when parents and members of the public threaten the safety of students or staff or disrupt the educational process. *See, e.g.*, *Cole v. Buchanan Cnty. Sch. Bd.*, 328 F.App'x 204, 209 (4th Cir. 2009) (holding that a school board "has inherent authority to restrict access to the property that it controls" and "to remove or bar from entry an individual who threatens the safety of students or staff, or who disrupts the orderliness of the educational process"); *Carey v. Brown*, 447 U.S. 455, 470-71 (1980) (holding that the Constitution does not leave state officials "powerless" to prevent conduct that "disturbs the tranquility" of schools). Concerns of disruption and possibly safety were present here. The letter sent by Mr. Owusu states that Plaintiff's entry "ha[d] the effect of disrupting and/or disturbing the normal functions of this school." (ECF No. 1-4, at 2). Although the letter does not specifically cite safety concerns, if Defendants did possess court documentation forbidding Plaintiff's entry, such documentation likely heightened Defendants' alarm.

Moreover, courts have found bans prohibiting parents from accessing school premises even after school hours to be constitutional. *See, e.g.*, *Wood*, 2016 WL 8669913, at *2, *10 (finding no due process violation when ban prevented parent from attending parent teacher school organization meetings, planning events for his child, and events honoring his child's academic

16

achievements); *see also Davison*, 19 F.4th at 630, 641-42 (holding that school officials were entitled to qualified immunity and finding no due process violation where ban prohibited parent's presence on school property and attendance at any school-sponsored activities).   Thus, Defendants did not violate Plaintiff's Due Process rights by banning Plaintiff from attending K.A.A.'s volleyball game or his younger child's graduation ceremony at Clarksburg High School, in addition to banning his entry during school hours.

Plaintiff's argument that Defendants engaged in deprivation of reputation also fails.  Plaintiff did not allege deprivation of reputation in the complaint, and he may not amend the complaint in an opposition to a motion to dismiss.  *McDonald*, 219 F.Supp.3d at 541; *Osei v. Univ. of Maryland Univ. Coll.*, No. 15-cv-2502-DKC, 2018 WL 2117927, at *2-3 (D.Md. May 8, 2018).   Moreover, reputational injury alone, without a related constitutional deprivation, is insufficient to constitute a Fourteenth Amendment violation.  *Paul v. Davis*, 424 U.S. 693, 701 (1976); *see also Pettigrew v. Baltimore City Police Dep't*, No. L-10-cv-652-BEL, 2010 WL 1258182, at *1 (D.Md. Mar. 25, 2010) ("Injury to reputation alone does not result in a deprivation of a liberty or a property interest protected by the Due Process Clause of the Fourteenth Amendment.").

Plaintiff has not plausibly alleged that Defendants violated his Due Process rights by prohibiting him from entering school premises.  Count II will therefore be dismissed.

### D. Qualified Immunity

Defendants argue in the alternative that Mr. Owusu and Ms. Grigsby are entitled to qualified immunity for damages as to Counts I and II.  (ECF No. 16-2, at 13).  Plaintiff responds that they are not entitled to qualified immunity because they knew or should have known that their actions violated Plaintiff's First and Fourteenth Amendment rights.  (ECF No. 18, at 10).  Defendants reply that Plaintiff has not alleged that a right was violated, that the right was clearly established, and that a reasonable official in the same position would understand that the conduct was unlawful.  (ECF No. 19, at 6).

Because the court will dismiss Counts I and II on other grounds, it need not reach the question of qualified immunity.

### E. Article 24 of the Maryland State Constitution Claim

In Count III, Plaintiff alleges that Defendants violated his right to freedom of assembly under Article 24 of the Maryland State Constitution.  (ECF No. 1 ¶¶ 28, 29).

Defendants correctly argue that because Article 24 is analyzed *in pari materia* with the Fourteenth Amendment, Count III should be dismissed for the same reason as Count II.  (ECF No. 16-2, at 15).  "Article 24 is the State's constitutional guarantee of

18

due process and equal protection of the law." *Taylor v. Go-Getters, Inc*, No. 20-cv-3624-ELH, 2021 WL 5840956, at *16 (D.Md. Dec. 9, 2021) (citing *Town of Easton v. Pub. Serv. Comm'n of Md.*, 379 Md. 21, 41 n.11 (2003)). It is well settled that Article 24 is interpreted *in pari materia* with the Fourteenth Amendment. *Hawkins v. Leggett*, 955 F.Supp.2d 474, 496 (D.Md. 2013), *aff'd sub nom. In re Canarte*, 558 F.App'x 327 (4th Cir. 2014) (quoting *Rosa v. Bd. of Educ. of Charles Cnty., Md.*, No. 8:11-cv-02873-AW, 2012 WL 3715331, at *6 (D.Md. Aug. 27, 2012) (noting that "Article 24 of the Maryland Declaration of Rights is the state law equivalent of the Fourteenth Amendment" and "[t]herefore, the analysis under Article 24 is, for all intents and purposes, duplicative of the analysis under the Fourteenth Amendment[]"); *Littleton v. Swonger*, 502 F.App'x 271, 274 (4th Cir. 2012) (noting that Article 24 is construed *in pari materia* with the Fourteenth Amendment)).

Because Plaintiff's Fourteenth Amendment claim will be dismissed, his Article 24 claim will be dismissed as well.

### F. Section 26-102 of the Maryland Education Code Claim

In Count IV, Plaintiff alleges that Defendants violated § 26-102(b)(1) of the Maryland Education Code by forbidding him from entering school property. (ECF No. 1 ¶¶ 31, 32).

Defendants contend that Count IV should be dismissed because there is no private cause of action for violation of § 26-102 and Plaintiff's allegations do not establish how Defendants violated

19

the provision.   (ECF No. 16-2, at 15).   Plaintiff does not substantively respond, instead arguing that "[b]ecause determination of the motion to dismiss requires a review of the substantive law applicable to the claims ple[]d, the court must review the substantive law on which the plaintiff's claims [are] based." (ECF No. 18, at 12).   Defendants reply that Plaintiff's opposition does not refute their point that there is no private cause of action § 26-102 and does not identify any part of the complaint that alleges how Defendants violated § 26-102.   (ECF No. 19, at 7).

Section 26-102 of the Maryland Education Code provides:

(b)   The governing board, president, superintendent, principal, or school resource officer of any public institution of elementary, secondary, or higher education, or a person designated in writing by the board or any of these persons, may deny access to the buildings or grounds of the institution to any other person who:

(1) Is not a bona fide, currently registered student, or staff or faculty member at the institution, and who does not have lawful business to pursue at the institution;

(2) Is a bona fide, currently registered student at the institution and has been suspended or expelled from the institution, for the duration of the suspension or expulsion; or

(3) Acts in a manner that disrupts or disturbs the normal educational functions of the institution.

Md. Code Ann., Educ. § 26-102(b).  Plaintiff does not allege how Defendants violated this provision.  To the contrary, § 26-102(b) authorizes Defendants to restrict Plaintiff's access to enter school premises.  *See Wood*, 2016 WL 8669913, at *10 (dismissing Due Process claim of parent who had been banned from school because § 26-102(b) explicitly authorizes the school officials to deny his access).  Moreover, the statute does not create a private cause of action, either explicitly or by implication.  *See Fangman v. Genuine Title, LLC*, 447 Md. 681, 693-94 (2016) (quoting *Baker v. Montgomery Cnty.*, 427 Md. 691, 710 (2012)) ("Courts discern . . . whether a private cause of action was intended by analyzing the language of the statute to identify its purpose and intended beneficiaries, reviewing the statute's legislative history, and determining whether the statute provides otherwise an express remedy.").  Plaintiff is clearly not one of the class for whose benefit the statute was enacted, there is no indication of legislative intent to create a remedy for parents in this situation, and it would not be consistent with the underlying purposes of the legislation to imply a remedy for parents such as plaintiff.

Accordingly, Plaintiff has not stated a claim that Defendants violated § 26-102(b) of the Maryland Education Code.  Count IV will therefore be dismissed.

### G. Request for Injunctive and Declaratory Relief

Defendants argue that because "Plaintiff has failed to state a claim for Counts I – IV, Plaintiff's requested relief, including Plaintiff's requests for injunctive and declaratory relief, must fail."  (ECF No. 16-2, at 16).

Claims for relief are not separate causes of action.  Because Plaintiff has failed to state a claim upon which relief could be granted in any of the counts, his complaint, including the requests for injunctive and declaratory relief, will be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted.  A separate order will follow.

```
                           /s/
```
DEBORAH K. CHASANOW
United States District Judge